243 So.2d 517

Johnny Lee **CLARK**

v.

Carolyn Streeter **CLARK** (Holmes).

**6 Div. 73.**

Court of Civil Appeals of Alabama.

Dec. 16, 1970.

Rehearing Denied Jan. 20, 1971.

Fred Blanton and Morel Montgomery, Birmingham, for appellant.

No brief for appellee.

BRADLEY, Judge.

Johnny Lee Clark, appellant, married Carolyn Clark, appellee, on November 4, 1963 and lived with her as man and wife until November 8, 1967 when they separated due to the alleged cruelty of appellant. The bonds of matrimony were dissolved on October 22, 1968 by the Circuit Court of Jefferson County, in Equity.

As a result of this marriage, one child was born—a son named Antonio Juan Clark.

The divorce decree also awarded the care, custody and control of the minor son to the appellee-mother with the "right of reasonable visitation to the Respondent, the father." The appellant also was required to pay $65.00 per month as support and maintenance of the minor son.

The trial court also awarded to appellee's attorney a reasonable fee of $250.00.

According to the record, both parties apparently complied with the decree of October 22, 1968 up until July 1969, when appellant failed to make the required support payments for the months of July, August and September 1969. He did pay, however, $35.00 for the month of August 1969, but paid nothing for the month of September 1969. Appellant was also delinquent in paying a part of the appellee's attorney's fee.

Garnishment proceedings were sued out to require appellant to make the delinquent

payments. The garnishment was complied with by appellant.

So far as the record shows, appellant made the support payments until January 1970 when he again failed to pay the required amount each month.

Prior to this time appellee testified that she had permitted appellant to visit with the child every Sunday; although appellant stated that appellee would not let him visit the child "too much" because he was not paying the full amount called for by the decree.

Appellee married Charlie Holmes on February 1, 1969, and three days later Charlie was drafted into the Army. Appellee stated that her new husband had his draft notice two days before they were married, but she knew nothing of this until after they were married.

On January 13, 1970 appellee left for Germany to join her husband who had been stationed in Germany with the U. S. Army for about six months. Appellee also took her son with her to Germany.

Appellee testified that she saw appellant the day before she left for Germany, told him where she was going, and that she was taking the child with her. She stated that appellant made no objection to her taking the child to Germany, and, in fact, she said she knew nothing of an objection to the child being in Germany with her until she returned to Birmingham in May of 1970 to attend the funeral of her brother. She said she received news of her brother's death one day and took a plane to Birmingham the next day. In order for her to make the trip, her husband borrowed $470, the round-trip fare, for her to attend the funeral. She also said that had she brought the son, the fare would have been almost $700.00, and her husband could not afford to pay this amount of money. He was a Specialist 4 in the Army, receiving $250 per month, including all allowances.

Appellee stated that her family lived off the Army base and had to pay rent for their apartment out of the $250.00. She does not have an outside job.

She testified that while she was in Birmingham the child was cared for in the daytime by the Army and at night by her husband.

She testified that as soon after she arrived in Germany as she could, she sent appellant a letter giving him the address where she and the son and her new husband were living, and advised him that he was welcome to visit the child at any time. She also asked that he send the support payments to that same address. A copy of the letter was introduced into evidence. The letter was authenticated by her husband's commanding officer.

Appellant testified that he did not know where his son was until he received a letter from appellee on January 29, 1970 requesting support payments due at that time. He also stated that he was not financially able to go to Germany to see his son. Nor could he afford to pay the child's way back to Birmingham to visit him.

The Petition to Modify the original divorce decree was filed with the Circuit Court by the appellant on May 12, 1970 and personal service was had on appellee in Jefferson County. This occurred at the time she was home for the funeral of her brother.

The petition was answered and a hearing was had thereon by the court without a jury.

The court entered a decree denying the modification request and ordered petitioner-appellant to pay the support arrearages of $325.00, an attorney's fee of $100.00 to be paid appellee for her defense of the petition and court costs.

There was an application for rehearing and it was denied. Thereafter an appeal was perfected to this court from the decree denying the petition to modify and from the decree overruling the application for rehearing.

There are three assignments of error filed with the record.

Assignment one asserts that the trial court erred in denying appellant's petition to modify and dismissing same.

In support of assignment one, appellant, in substance, argues that appellee's action in removing the minor child from the jurisdiction of Jefferson County Circuit Court requires a finding that the circumstances have sufficiently changed since the divorce decree as to compel the court to grant the modification petition to the extent of suspending the requirement that he make support payments while the minor son is in Germany with his mother. In other words, the presence of his son in Germany prevents him from having "reasonable visitation rights" as provided in the divorce decree, and, therefore, as long as this condition exists, he should not be required to make support payments.

Appellant admits in brief that support payments maturing prior to the filing of the petition to modify are immune from change. Wood v. Wood, 275 Ala. 305, 154 So.2d 661. Yet, he failed to make the February, March and April payments, all maturing prior to the filing of the petition to modify.

This refusal to pay by appellant in the face of the requirement to pay suggests to us a motive other than the failure to visit his son.

Appellant also admits that the divorced parent with full custody rights over the child has the right, if not restricted by the court, to remove said child from the jurisdiction of the court granting custody. Sparks v. Sparks, 249 Ala. 352, 31 So.2d 313.

In *Sparks,* supra, custody was granted to the father without restriction, and shortly after the divorce he moved to Detroit, Michigan where he obtained a job. He took his son with him. The Supreme Court said he had a perfect right to do so.

The Supreme Court also said in this same case that where a petition to modify a divorce decree to alter custody of children is submitted to the court, the burden of proving changed conditions since the decree sufficient to warrant the court in modifying the decree is on the petitioner.

The question before the trial court was whether petitioner had sustained the burden. It apparently thought not, because it refused to modify the decree in the particulars requested by appellant.

The only evidence of changed conditions that could have been considered by the trial court after the conclusion of the hearing on the modification petition was that relating to the removal of the minor child from the jurisdiction of the Circuit Court of Jefferson County.

There was no evidence of the unfitness of the mother to properly care for the child; there was no evidence of the foster father being a detrimental influence on the child; in fact, the only evidence of a "changed condition" was the removal of the child from the jurisdiction of the court granting custody and requiring support payments.

In Alexander v. Davis, 261 Ala. 654, 75 So.2d 614, the Supreme Court said:
"The facts in the case of Sparks v. Sparks, supra, are closely analogous to the case at bar. In that case we held that mere removal to a distant state of the minor child * * * was not such a change of conditions as to justify modification."

The evidence shows, if believed by the trial judge, that appellee told appellant she was going to Germany to live with her husband and was taking the child with her. No objection was made by appellant. As soon as she got to Germany she wrote appellant and told him where they were living and invited him to visit the child. She testified she and her husband were financially unable to send the child to Birmingham, and appellant testi-

fied that he was unable financially to go to Germany to see the child.

■ It is quite obvious that appellee did not violate the October 22, 1968 decree by taking the child to Germany because the decree did not prohibit the mother from removing the child from the jurisdiction of the court.

And, as we have seen from *Sparks,* supra, and Alexander v. Davis, supra, where there is no legal impediment, the custodial parent has the right to take the child outside the jurisdiction of the court granting custody.

Therefore, it appears to us that the appellant's situation is one where the visitation privilege accorded him by the court is, at most, now impracticable to accept. He states he cannot financially afford a trip to Germany to see the child, nor can he afford to pay the expenses of the child coming to Birmingham. Appellee testifies that she is in similar financial straits.

Moreover, appellee has not refused appellant the right to visit his son, nor has appellant undertaken to find out whether he would be refused the right of visitation.

One would conclude, after reading the record, that appellee would cooperate with appellant in according visitation.

■ We do not think that the impracticability of visitation constitutes "a changed condition" such as would authorize a modification of the October 22, 1968 decree to the extent of suspending support payments for the period that the son is outside the jurisdiction of the Circuit Court of Jefferson County.

We also believe that this conclusion is solidified by the holding of the Supreme Court in Headley v. Headley, 277 Ala. 464, 172 So.2d 29, wherein it said:

"The rule generally followed in other jurisdictions is: Where the decree expressly prohibits the wife from removing the children from the jurisdiction of the court, so as to place her in contempt of court for doing so, the husband is relieved from making payments while she has the children outside the state.

" * * * These decisions seem to us to be sound, and since there was no provision prohibiting the removal of the children from the state by the wife in the instant case, we are of the opinion that the trial court erred in giving the father credit against the back payments for the period the wife had the children in Texas."

■ As previously pointed out, there was no provision in the decree prohibiting the mother from taking the child outside the jurisdiction of the court; therefore, in keeping with the rule laid down in *Headley,* supra, the trial court correctly ruled that the appellant was not entitled to any credit on his child support payments while the child was outside the jurisdiction of the court.

We therefore agree with the trial court that appellant failed to carry the burden cast upon him of convincing the court that conditions had changed sufficiently since the October 22, 1968 decree as to require a modification of said decree, and said petition was properly denied.

In his assignment of error two, appellant says that the trial court erred in fixing the arrearage at $325.00, which would be for the months of February through June 1970. He says it should have been $195.00, which would have been for the months of February, March and April—the arrearage that accumulated prior to the filing of the petition for modification.

■ Since we have decided that the trial court acted properly in denying the petition for modification, the trial court was correct in saying that appellant owed $325.00 in delinquent support payments as of the day of the decree. No error here.

Appellant, in his assignment of error three, contends that the trial court erred

in awarding attorney's fees to appellee for the defense of the modification petition.

In the case of Whittle v. Whittle, 272 Ala. 32, 128 So.2d 92, wherein an ex-husband was seeking modification of a divorce decree, the Supreme Court, in affirming the allowance of $100.00 as attorney's fee for the ex-wife, said:

"Where the divorce decree provided for alimony and maintenance, as here, such provision continues to be within the power of the court to modify on account of changed conditions and, since the court retains such rights, there is incidental to it also the right to attorney's fees under proper circumstances. Keith v. Paden, 255 Ala. 294, 51 So.2d 9."

The Supreme Court in *Paden,* supra, said:

"The provision in the decree of the court for allowance to be paid by the husband for the support of the minor children is in a sense a feature of the alimony provision. * * * When the court retains jurisdiction to modify the allowance for the children, there should be and is reserved, in that respect, the right to award an attorney's fee when the same is appropriate or necessary in the opinion of the court."

■ We are of the opinion that the trial court did not abuse its discretion in awarding $100.00 to the appellee as her attorney's fee. Lyons v. Lyons, 279 Ala. 329, 185 So.2d 121.

There being no reversible error in the record of this case, it is affirmed.

Affirmed.

## ON REHEARING

Petitioner submits that this court misapplied Headley v. Headley, 277 Ala. 464, 172 So.2d 29, in that in *Headley,* supra, the removal of the children was to a jurisdiction amenable to United States law, while in the instant case the removal was to Germany.

In view of the peculiar facts in the instant case, this court is of the opinion that such a distinction is not material. The record is clear to the effect that the appellee has at all times exhibited a willingness to allow the petitioner to visit the child. Furthermore, the appellant made no objection to the appellee's taking the child to Germany in the first place. In addition, the record shows that appellee's stay in Germany is only temporary while her present husband is stationed there. To allow petitioner to stop the support payments under the facts as set out above is certainly not within the well established and often quoted "best interests of the child," as the record clearly shows that the appellee and the minor child need the support payments.

Furthermore, in the case of Schneider v. Schneider, 207 Iowa 189, 222 N.W. 400, relied on and cited in *Headley,* supra, the Iowa Supreme Court stated:

"The question of whether he should penalize the plaintiff by refusing to pay alimony until the children were placed in a home in Council Bluffs (where the parties originally lived) is largely, if not wholly, a matter of discretion with the court, and we do not think he abused his discretion. It is true that * * * appellant * * * being a wage-earner and required to pay the amount specified in the decree to the support of these children, in addition to his own incidental expenses, would probably leave very little to defray the expenses of trips to St. Louis to visit these children, yet we are unable to see where we are in a position to remedy this situation."

Similarly, in the case of Stanfield v. Stanfield, 67 Okl. 56, 168 P. 912, cited in and relied on by *Headley,* supra, the court, faced with a removal of a minor child to Mexico, stated:

"Certainly, in the absence of a specific requirement in the decree that the plaintiff in error should keep herself or the children within the jurisdiction of the court, such absence ought not be held

to suspend the payment of alimony * * *."

We therefore re-assert that in view of a lack of any showing of unwillingness to allow visitation, and in view of the rationale of the cases cited in *Headley,* supra, we feel that the decision is due to be affirmed.

Opinion extended.

Application for rehearing overruled.